**IN THE DISTRICT COURT OF THE UNITED STATES FOR THE**

**MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:17cr14-MHT |
| **DAVID SCOTT GAFFORD** | ) | (WO) |

OPINION AND ORDER

<u>A. Competency Evaluation</u>

The first issue before the court is whether defendant David Scott Gafford, who is charged with being a felon in possession of a firearm and ammunition, 18 U.S.C. § 922(g), has the mental capacity to stand trial. The test is a two-part disjunctive one: whether he is currently suffering from "a mental disease or defect rendering him mentally incompetent to the extent that he is unable [1] to understand the nature and consequences of the proceedings against him or [2] to assist properly in his defense." 18 U.S.C. § 4241(a).

The court directed defense counsel to have a psychologist conduct an evaluation of Gafford's

competence to stand trial. Defense counsel selected Dr. Glen K. King, who, after evaluating Gafford, concluded as follows: While Gafford allegedly has been disruptive while in the custody of the United States Marshal and threatened suicide, and while Gafford reports having previously attempted suicide and taking anti-depressants Remeron and Wellbutrin immediately prior to being transferred to local custody, he "has never been treated for mental illness" and currently has the ability to understand the nature and consequences of proceedings against him and to assist adequately his legal counsel in his defense. Forensic Evaluation (doc. no. 60) at 4-5.

Based on the current record and the representations made in open court and during an <u>in camera</u> hearing on August 25, 2017, the court is concerned that, despite Dr. King's report, Gafford may be suffering from 'severe depression.' Gafford reports, and the government does not contest, that he has until recently been taking the anti-depressants Remeron and

2

Wellbutrin, and that these medications were abruptly stopped upon his transfer from Bibb County Correctional Facility to the Montgomery County Detention Center (MCDC). In addition, Gafford made pro se filings in advance of the August 25 hearing and made representations in court that could be reasonably viewed as significantly against his self-interest. See, e.g., Def.'s Mot. to be Heard (doc. no. 62); Def.'s Mot. for New Attorney (doc. no. 49). In a letter to the MCDC warden, Gafford described himself as "worthless," "a piece of shit," "a failure," and as "willing to hurt someone, hurt myself, kill someone or kill myself." Letter to Warden of Montgomery County Detention Center (doc. no. 63). In open court on August 25, Gafford insisted on his wish to wear his prison clothes at trial, over the court's warning that doing so could severely prejudice him to the jury and that he had a right to wear street clothes, see Estelle v. Williams, 425 U.S. 501 (1976); he said he wanted the jury "to see me for who I am." Gafford also initially

stated <u>in camera</u> that he wished to call a certain witness, despite agreeing with his counsel's indication that the witness's testimony would likely be detrimental to his case; he said he wanted "it all to come out" and to be judged by the jury. The court is concerned that through these actions and statements Gafford may be on essentially a 'kamikaze mission' against his own welfare.

The court is further troubled that Dr. King's forensic evaluation of Gafford's competency is quite cursory and conclusory, and, at times, appears internally inconsistent (for example, Dr. King reports that Gafford was receiving the antidepressants Remeron and Wellbutrin while in the custody of the Alabama Department of Corrections but also states that Gafford "has never been treated for mental illness"); does not reflect a sufficiently extensive and reliable knowledge of Gafford's history of mental illness and treatment; and is thus inadequate for making an accurate determination as to Gafford's competency to stand

trial.  Moreover, Gafford complained that Dr. King's meeting with him was extremely brief and inadequate, and, notably, Gafford himself admits that he has concerns about his mental state and wants a further, more in-depth examination.

Under these circumstances and despite Dr. King's report, the court remains concerned about Gafford's competency to stand trial.  As stated, the test is a two-part disjunctive one: whether he is currently suffering from "a mental disease or defect rendering him mentally incompetent to the extent that he is unable [1] to understand the nature and consequences of the proceedings against him or [2] to assist properly in his defense."  18 U.S.C. § 4241(a).

This court is specifically concerned that, while Gafford appears able to understand the nature and consequences of the proceedings against him, he may not be adequately able "to assist properly in his defense," 18 U.S.C. § 4241(a), for his actions, as described above, could be viewed as strongly against his

self-interest and as arising out a mental illness (depression), rather than as the product of reasoned and rational choices. See United States v. Rodman, 233 Fed. Appx. 320 (4th Cir. 2017) (recognizing disjunctive nature of § 4241(a), and finding defendant incompetent because he was unable to properly assist in his defense, despite sufficient understanding of the charges against him); United States v. Friedman, 366 F.3d 975 (9th Cir. 2004) (same); United States v. Hemsi, 901 F.2d 293 (2d Cir. 1990) (upholding finding of incompetency to stand trial, despite defendant's ability to understand the nature of the charges against him, because his courtroom behavior indicated he could not "assist properly in his defense"); see also Drop v. Missouri, 420 U.S. 162, 180 (1975) (evidence relevant to competency includes a defendant's "irrational behavior" and "his demeanor at trial").

The court, therefore, finds it necessary that Gafford undergo further, independent, in-patient psychological evaluation to determine his competency to

stand trial on the charge now against him.  He will be committed to the custody of the warden of an appropriate institution designated by the Attorney General to be observed, examined, and treated by one or more qualified psychiatrists or psychologists.

The court emphasizes that it is concerned that Gafford's choices <u>could be</u> reasonably viewed as so strongly against his self-interest as not to be those of a mentally competent person; the court is not saying his choices definitely reflect such.  After a finding of mental competency, Gafford could very well make the same choices and be held to them.  As a general matter, a mentally competent defendant can, and has a right to, make unreasonable choices.

## B. Presentence Study

In addition to the above evaluation, the court will order a mental-health evaluation pursuant to 18 U.S.C. § 3552(b), for the purpose of assisting it in

fashioning an appropriate sentence if Gafford is found competent and is convicted.

"Although district courts are no longer bound to follow the Sentencing Guidelines after United States v. Booker, 543 U.S. 220 (2005), they still must consult the Guidelines and take them into account when sentencing defendants." United States v. Todd, 618 F. Supp. 2d 1349, 1352-53 (M.D. Ala. 2009) (Thompson, J.). The court must calculate the applicable range of sentences recommended by the Guidelines. The court may then decide to impose a sentence outside of the Guidelines system, commonly known as a 'variance.'

The court is bound, however, to impose a sentence that is reasonable. The factors set forth in 18 U.S.C. § 3553(a) guide the court's determination of the reasonableness of a sentence. Those factors are (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to punish the offender, protect the public from the defendant, rehabilitate the

defendant, deter others, and provide educational or vocational training and medical care; (4) the kinds of sentences available; (5) the sentencing range established by the Sentencing Guidelines; (6) any pertinent policy statements issued by the Sentencing Commission; (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need for restitution.  18 U.S.C. § 3553(a).

U.S. Probation officers routinely prepare presentence investigation reports to assist the court during sentencing pursuant to 18 U.S.C. § 3552(a). However, 18 U.S.C. § 3552(b) also authorizes the court to order a "study of the defendant" if it "desires more information than is otherwise available to it as a basis for determining the sentence to be imposed."  18 U.S.C. § 3552(b).

The court here desires a report on how Gafford's mental health impacts any or all of the eight sentencing factors listed above, but in particular

seeks information about his mental-health history and characteristics; which mental-health services, if any, are necessary to treat his illness; and what services and supports are recommended to assist with his rehabilitation, both during incarceration and upon release.

While a presentence study ordinarily "shall be conducted in the local community by qualified consultants," the statute also authorizes the court to order that the study be done by the Bureau of Prisons upon the finding of a "compelling reason." In this case, the court finds that the fact that Gafford is already in the custody of the Bureau of Prisons and will be examined by its mental-health professionals for the purposes of a competency evaluation constitutes a compelling reason to order that the presentence study be conducted by the Bureau of Prisons as well.

* * *

Accordingly, it is ORDERED as follows:

(1) Pursuant to the provisions of 18 U.S.C. § 4241 and §§ 4247(b) & (c), the United States Marshal for this district shall immediately remove defendant David Scott Gafford to the custody of the warden of an appropriate institution as may be designated by the Attorney General, where he is to be committed for the purpose of being observed, examined, and treated by one or more qualified psychiatrists or psychologists at the institution. The statutory time period for the examination shall commence on the day defendant Gafford arrives at the designated institution. The examination shall be conducted in the suitable facility closest to the court, unless impracticable.

(2) Pursuant to 18 U.S.C. § 4247(c), the examining psychiatrists or psychologists conducting the mental examination of defendant Gafford shall report in writing to this court their findings, opinions, and conclusions relative to the competency or incompetency of defendant Gafford as well as other issues related to his mental state. They shall specifically report to

and advise this court as to the following issues: whether in their opinion defendant Gafford is currently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or, notably, to assist properly in his defense.

(3) Pursuant to 18 U.S.C. § 3552(b), the examining psychiatrists or psychologists shall evaluate defendant Gafford's psychological condition for the purposes of sentencing and shall include their findings in either the competency evaluation or in a separate report to be presented to this court. In particular, the study shall inquire into and report on the following matters:

(a) What is defendant Gafford's history of mental illness or other mental condition or disability, what conditions has he been diagnosed with in the past, and what treatment has he received;

(b) What mental-health conditions or disabilites, if any, does he currently suffer from, and

how do these conditions impact his daily functioning and his response to stressors;

(c) What treatment or other services should he receive to address his mental-health conditions;

(d) In light of his mental-health conditions, what mental-health treatment, counseling, and/or other community-based services would, as part of a re-entry plan, help to ensure that he succeeds in complying with the conditions of supervision and becoming a law-abiding, productive citizen.

(e) Any other matters the Bureau of Prisons believes are pertinent to the sentencing factors set forth in 18 U.S.C. § 3553(a).

DONE, this the 31st day of August, 2017.

/s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**